Please call the last case of the afternoon. 115-3587 Julian Alexander v. Workers' Compensation Commission, Yellowwood Way Corporation. Counsel, you may proceed. Thank you, Your Honor. May it please the Court? Counsel, my name is Britt Eisley. I represent Julian Alexander in this case. This case, for us, is also an against-the-manifest weight of the evidence case. The weight of the evidence here compels an opposite decision. The Commission here said that there was no accident history in the records, and that's simply wrong. There were, in fact, three accident histories in the records that the Commission did not rely on, and neither did the Circuit Court. The first one being January 25, 2011, St. James Hospital record that says that Alexander complained of bilateral lower extremity pain with symptoms beginning six days ago when he had fallen backwards. The second accident history, and that's just within six days of the accident. The second accident history comes the next day on January 26, where it's a telephone message from Alexander to Dr. Markovic saying, spoke to patient today. He's at St. James Hospital, status post-fall, at work. Complains of bilateral leg pain and weakness. He stated they did an MRI and told him it was possibly an issue with his back. And the third, another entry on January 27, where he's seen by Dr. Markovic, his doctor, and Markovic reports in the record, Mr. Alexander relates onset of symptoms a week ago when he slipped and fell, landing on his back. He experienced low back discomfort with bilateral posterior leg symptoms the following morning. Stayed off work for a couple of days without improvement and was subsequently seen in the emergency room. An MRI was obtained and he was told he had three herniated discs. He states he was planning on filing a worker's comp claim. How much time went by before the claimant first reported the accident? Nine days. And that's what troubled the Commission. That's what they hung their head on. The problem here is they had some, they made some credibility determinations against the claimant. They said, tell me if I missed it, that it's fair to report the accident as he had done in the past, coupled with his extensive knowledge regarding safety requirements and the need to report accidents, as he had in the past. And he was some kind of a safety advisor, wasn't he, to the? Yes, he was a safety officer. It's unexplained. He has a serious injury. He doesn't say anything for nine days, even though he went in and saw an emergency room doctor and said nothing about the pain? It doesn't seem strange? He explained it as being that he wanted to walk off the pain. You don't stub your toe and go to the emergency room. You try to walk off the pain, and that's what he said in this case. And I would point, I would respond to your point about credibility. Mr. Alexander, unfortunately, in this case, in front of YRC, will never be able to be treated the same way as other employees. In other words, he's treated differently than everyone else at YRC because, to be believed, he has to report the incident on the day of the accident every time. Did they say that? Well, that's the effect of it in the end because they do have an immediate reporting policy. And in Mr. Alexander's case, he was a Sterling employee. He always gave, at least in the few cases that they cited, he always gave notice the day of the accident. So that's why I tied in the Tommy Oliver case. In many ways, it has the same effect as Tommy Oliver. That was a claimant with an employer that only allowed notice on the day of the accident. Otherwise, the case was not compensable. And they pointed out 6C, saying that the employer has a statutory obligation to take notice within 45 days. And in the same way, I think Alexander should be given that chance. He should be able to give notice on days after the day of the accident up to 45 days. I don't have any problem with the argument in fairness to the claimant, but the problem I think we're going to have as a court is, tell me if I missed the language, the commission found the claimant's testimony regarding the alleged accident was not credible and was unsupported by the evidence. If they make a credibility finding, how do we reverse that? On what basis do we reverse that? Do we substitute our finding of credibility for that of the commission, and can we do that? No, you can't substitute a credibility finding, but you can look to other evidence that came in, like these accident histories, the fact that he had an MRI that showed herniated discs, the fact that he eventually needed a three-level laminectomy on January 31st. Even just a temporal relationship, he had never had back problems before this accident and treatment immediately before this accident, and suddenly he needs a surgery to his back. These other pieces of evidence, I think, weigh for the claimant, even though there is this credibility finding. And I would point out, even though Your Honor has pointed out in the last case, the arbitrator found expressly that he was credible after watching his testimony. I understand that the commission has the discretion to reverse that and say that he wasn't credible, but the arbitrator found him credible. One of the dissenting commissioners in this case, because it was a two-to-one decision, found that he agreed with the arbitrator and that he was credible and that there should have been an accident found in this case. So I'm simply saying that there is other evidence beyond his credibility finding that would allow this court to reverse this case. And I also think that the effect of this is an incorrect application of 6C. In other words, this man will not have the benefit of 45 days' notice as long as he's with YRC. He's going to have to get notice the day of the accident, or else he's found not credible. That's essentially what the commission is finding in this pattern of reporting accidents the day of the accident. So, Your Honors, we pray that the circuit court and commission's decisions be reversed by this court as they're against the manifest weight of the evidence and the arbitrator's decision be reinstated. We ask further that the arbitrator decision be modified to award Alexander his medical and benefits paid by his local 705 Health and Welfare Fund, which holds in Risolene. And finally, we ask for penalties and fees to be awarded here as they were awarded in the Tommy Oliver case. For the same reason. Thank you. Thank you, Counsel. You have time to reply. Counsel, you may respond. It pleases the court, Counsel Jim Roach, on behalf of the employer, YRC. Counsel's reliance on the Tommy Oliver case is misplaced. To start off, address that right off the bat. In Tommy Oliver, this court found that the employer relied only on the fact that the petitioner violated an employment policy. There was nothing else in that case. Actually, the representative for the employer testified that was the only reason they denied it. The petitioner said it was the only reason it was given. The medical history in that case was consistent. It's just a completely different case than we have here. Is there some medical evidence in this case, aside from this delay in reporting, that supports the claimant's position? It supports the claimant's position? Well, when he first went to the emergency room, he denied trauma. But later on, was there some medical evidence? So a number of days passes, and I think it's important to point this out. He does say that he fell. So he doesn't say he fell. Denies it when he first goes in. A couple days later, says that he fell. Doesn't say anything about work. A couple days later, says he fell again. Doesn't say anything about work. Gets discharged on the 26th, so he's been in there for four days. And he goes to Dr. Markovic on the 27th and says for the first time that he fell at work. Which, by the way, I'd like to address that, because counsel brings it up in both of his briefs. Brought up in an argument, has been bringing it up for quite a while now. If somebody has an accident, excuse me, if somebody does not have an accident, and goes and gives a history that's inconsistent with an accident, gives two more histories that are inconsistent with an accident, is beginning to be told that he may need to have surgery, and then changes his story, the fact that his testimony or anything he says after that date is consistent with that lie does not mean that he's credible. It means he's a good lawyer, but a good liar is all it means. I mean, he didn't say anything about work until the 27th. And the fact that he's consistent after that has nothing to do with a finding of credibility by the commission. The bottom line is, when he went to the doctor the first time, denied a fall, and then mentioned two falls later, and didn't say anything about work. That's the only part that's relevant in the medical records. But if this was just a case about medical records inconsistent with the story the commission had found that the petitioner was not credible, that itself is enough to sustain the burden under the manifest way of the evidence standard. But this decision has ample evidence, too much to talk about. So let's talk about the high point in addition to just the medical records that the commission relied on for its finding that the petitioner was not credible. Let's start with the petitioner's late reporting and how that undermines credibility. It's underbunded in the record that Alexander failed to report the accident for nine days. This isn't your common he-said-she-said case for the petitioner. Like the one earlier says, I reported the accident right away, and the employer brings a witness in to say, no, that's underbunded. He didn't report it for nine days. The commission expressed it relied on that in the finding, that by itself. So now we've got the medical records by themselves stand as sufficient evidence that this case is not against the manifest way of the evidence. That's number one. Now let's move to the late reporting, the nine days. There is ample cases where something like that has happened. The commission makes a credibility finding, says it has nothing to do with the employer. Well, it just says this impeaches their credibility. And there's all sorts of cases where that in itself, by itself, was enough for the commission to sustain the decision. In this case, the petitioner also had ample opportunities to report his accident. So he claims he slipped and fell while inspecting his truck. He found a problem with the truck, took it over to the repair shop, the GED shop, had numerous other employees there, admits he didn't tell them anything about having just fallen, an injury to his back and his buttocks. That's underbunded. He then goes to the dispatch house where he has to pick up his instructions on where he's going to go on his route. He admits there's two dispatchers in that house, and he admits he doesn't tell them anything about having just gotten hurt. That is also underbunded. I'd also like to point out that his union rules, not his employer's rules, his union rules require him to report it to a dispatcher. There's two dispatchers there. He doesn't say anything about it. And that's, again, underbunded testimony. What about his argument that if a claimant has 45 days to report it, is he being punished in this case because he didn't report it? My argument would be that has no relevance here at all. We haven't contested 6C notice at all. And there's two kinds of notice, obviously. There's statutory notice 6C, got to report it in 45 days. There's also the impact of when notice of an accident is given, the impact of that on somebody's credibility. And that's all we're talking about here. That's the reason this case was denied by the employer. That's the reason the commission found that the petition was not credible. It's not because of Section 6C at all. We did not contest notice at the time of trial. We haven't since this case started. We contested it because the petitioner made up an accident. And there's ample evidence in this record to support that. There's ample decisions based on credibility made by the commission to support that decision. And that's, you know, the notice has nothing to do with it. Additionally, the petitioner testified at work the next day, claims he got hurt on the 19th, worked on the 20th, admitted on cross-examination, had ample opportunities throughout the day to tell any dispatcher, supervisor that injured his back at work the day before, failed to do it. By the way, he has no reason for any of this. Never once did he testify in that entire record as to why he didn't address these issues at the time. And then that, again, is unrebutted. And then he calls on the 21st, and he has a foreman on the phone. So two days after this alleged accident occurs, informs him. He's not feeling well. He's not going to come in for the day. Has a foreman on the phone. Does the same thing to him about having injured himself two days previously. Again, that's unrebutted. Those four missed opportunities to report his work accident contradict his own claim that he suffered a work-related accident on January 19, 2011. And, again, this by itself, the ample opportunities he had to report the accident, his failure to do so, by themselves, under the Memphis weight standard, is sufficient to establish the commission's decision. We also have the petitioner's claim that there was no policy required in reporting of injuries. Again, the employer has never asserted that this has any kind of legal significance. It instead is impactful on his credibility. And that's the only reason why this has been brought up. There's a lot to it. I refer the court to my brief on pages 19 through 21 in the record. But for today's discussion, let's just talk about the fact that his own testimony directly contradicted himself. He admits that when he worked as a safety supervisor for 20 years for the employer, he constantly instructed drivers and co-employees that they had to report their accidents immediately. That's his own testimony. And, again, I'd like to point out there are three examples of policies provided by the employer, but we don't have to go there because his own union rules told him that he had to report an accident. And there's a very long, that, by the way, his own conduct contradicts this, but there's a long discussion of the difference between a work accident involving vehicles and a work injury. And I just want to let you know that the union rules, his own rules, say a work injury or accident. Prior work injuries, he had three prior work injuries that evidence was put in on. He testified at all three times. He reported the accident immediately. Here he reported it nine days later and gave absolutely no reason at all. Yet another example of something that stands by itself establishes that this decision was not against the manifest way of the evidence. And, oh, by the way, one of those three prior incidents involved a vehicular accident and two involved work injuries. So even if you somehow believe this distinction he makes between accident and injury, he had, by his own testimony, one accident, two work injuries, and reported all three. So it just doesn't make any sense. That, by itself, his work history and the reporting of it by itself is enough to sustain the commission's decision that the decision is not against the manifest way of the evidence. His show of performance logs, he admitted that that's something you fill out every day. The safety coordinator, Jack Engler, came in and testified that if anything happens to you, including an injury, you're supposed to put it down there. He signed them. He put them into evidence. And, oh, by the way, something else to think about. It's a gentleman who served 20 years on the safety committee, and he's claiming he fell and he slipped on ice and fell in the parking lot with other trucks. And yet he never told anybody about it. He created a hazard if, in fact, that piece of ice was there and he fell on it, which it wasn't. He ignored it. He didn't go in and tell anybody. He said he'd come out and put some salt on it. Basically, if you believe him, he endangered, despite his 20-year history on the safety committee, he endangered all his co-workers who could have come by and slipped on that ice. So in conclusion, the only question before this court is whether there's sufficient factual evidence in the record. Supporting the commission's finding that the petitioner was not credible when he claimed he suffered a work-related injury on January 19th of 2011 when he claims he slipped and fell on ice, I discussed four unrebutted examples and two contested examples of evidence in the record where the commission decided that the petitioner's credibility did not, the petitioner was not credible. And those six examples are not the only six examples. There's plenty more in the record. But those are the high points, and each one of those by themselves supports the commission's decision, and I provided six of them to you. And there's probably several more if you look at the record and at the briefs. Therefore, the commission decision should stand. And I'd also like to very briefly say that if you look at counsel's brief and both his briefs, it never even really addresses the issue of manifest weight. It never brings up what he does, basically, his misapplies. The obituary case asks this panel to re-weight evidence that was weighed by the commission, and then after admitting that, that's not what the law says. It points out that the employer did not provide any evidence of a counterweight that the petitioner injured himself. So the bottom line is there's really nothing that's been presented to this court in writing or orally to indicate that this case is against the manifest weight of the evidence. Thank you for your time. Thank you, counsel. Counsel, you may reply. Thank you. I would again point out that the medical records in and of themselves give a weight of evidence that compels an opposite conclusion. The employer, when arguing that union rules and company rules were important for him to, and I'll say that they were important for him to report on the day of the accident, they boxed him in here. And these rules are actually contrary to Section 6C of the Act. If they really do mean what they say, report the accident immediately or the day of the accident, that's contrary to 6C. And in much the same way, that's what happened to Tommy Oliver. In Tommy Oliver, the employer was admonished by this court because they essentially, the employer said that unless you report the day of the accident, you lose your case. 6C went out the window with that employer. So although the employer in this case says that they follow 6C and they have no issue with 6C, with their rules they boxed Mr. Alexander in, so there's no other way he can give notice except the day of the accident. I would also point out that his first visit to the doctor, he had denied trauma in the records, but at the time, remember, he went in for a heart condition. He was more concerned with his heart condition than with his back, and that was the reason, as Mr. Alexander testified, that he didn't report it right away. Actually, he told me that he reported it but that it didn't show up in the medical records, but that's, I think, maybe off the record. I can't remember him saying that in his testimony. So Alexander is being prejudiced here because of the effect of giving notice on the same day of the accident. He can't give notice any day later or his accident would be denied. So I think using that as a basis to find it not credible is wrong, but more than that, getting beyond credibility, the weight of the evidence here, the weight of the medical records allows for an opposite conclusion, and I would ask this Court to reverse. Thank you. Thank you, counsel. Thank you both, counsel, for your arguments in this matter, particularly the revisement. Written disposition shall issue. The Court will stand in recess until 9 a.m. tomorrow morning.